## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

| | |
|---|---|
| **WILLIE DAVIS, JACKIE PARKER,** **DERRICK THREADGILL, and** **EARNEST WHITTEN** | **PLAINTIFFS** |
| **VS.**          **CASE NO.: 4:18-CV-183-BSM** | |
| **CITY OF LITTLE ROCK, a municipality** | **DEFENDANT** |

## MEMORANDUM BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION AND FACTUAL BACKGROUND

**a.) Chief Kenton Buckner**

Chief Buckner began his tenure as Chief of Police for the Little Rock Police Department ("LRPD") in June of 2014. Prior to assuming command of the LRPD he was an Assistant Chief in the Louisville Kentucky Metropolitan Police Department. The Louisville Metropolitan Police Department incorporated a disciplinary policy that any officer who accrued over thirty (30) days of suspension would be terminated upon another policy violation that was severe enough for the officer to be suspended. In March of 2016, Chief Buckner identified a small number of LRPD officers who had accrued over 60 days of suspension[1]. Thereafter, at different times he informed them that if they were guilty of another policy violation for which they would be suspended he would terminate them instead. In March of 2016, the Plaintiff, Jackie Parker ("Mr. Parker") had accrued sixty-five days of suspension and two demotions[2]. On March 16, 2016, Chief Kenton Buckner demoted Mr. Parker from Sergeant to Patrolman for violating G.O. 106.IV.B and G.O. 106.IV.C., and according to Mr. Parker, when Chief Buckner demoted him he informed him that he would terminate Mr. Parker for any future policy violations that were suspend-able.

---

[1] The individuals on that list were: John Gilchrist, David Green, Cory Hall, Lisa Hernandez, James McKenzie, Thaddeus McCrae, Antonio Metcalf, Jackie Parker and Roosevelt Sanders.
[2] Chief Thomas demoted Mr. Parker from Sergeant to Patrolman, but the Civil Service Commission overturned the demotion and suspended Mr. Parker for 30 days instead.

**b.) Officer Jackie Parker**

Mr. Parker was a LRPD from September 11, 1995, until November 6, 2017[3], when Chief Buckner terminated his employment for violating General Order ("G.O.") 310.V.A. and Rules and Regulations ("RR") 1/4002.00. On May 19, 2017, Mr. Parker responded to a domestic disturbance at 4 Tombstone Court in Little Rock, Arkansas. He did so to support Officer Rena Evans who initially responded to the disturbance. The subject of the disturbance was named Aaron Barton, and Mr. Parker assisted Officer Evans by checking with LRPD dispatch to see if Mr. Barton had outstanding warrants. LRPD dispatch informed Mr. Parker that Mr. Barton had two orders of protection and one of which was for Tina Aaron, the complainant at the scene. After receiving this information Mr. Parker copied 10-4, and informed the other officers on the scene that Mr. Barton did not have any warrants. Mr. Barton was released.

Sgt. Quiller, Mr. Parker's immediate supervisor, initiated an investigation into why an arrest was not made during a disturbance call at 4 Tombstone Court. He did so because he was aware of an outstanding order of protection that the resident, Tina Aaron, had against the suspect, Kevin Barton. Due to Mr. Parker's oversight at 4 Tombstone Court, Sgt. Quiller looked at other incidents to see if there was a pattern on Mr. Parker's behalf of oversight when responding to calls. Sgt. Quiller discovered that on May 18, 2017, Mr. Parker failed to serve an active parole warrant. On that date Mr. Parker encountered Darnell Smith at the intersection of Asher and University Streets in Little Rock, Arkansas. He encountered Mr. Smith to enforce City Ordinance 17-131, which was a ban on solicitation within the city streets or medians. When Mr. Parker contacted dispatch to run a records check on Darnell Smith, Dispatch informed Mr. Parker that Mr. Smith had a parole violation, and that he was a parole violator. Mr. Parker responded 10-4 and released Mr. Smith. Chief Buckner authorized an internal investigation, and on October 12, 2017, Mr.

---

[3] *SUMF 1*

Parker was served a Notice of Intent, which informed him that a disciplinary action was being considered against him for violation of General Order 310 Section V.A. and Rules and Regulation Section 1/4002.00.   The Notice informed Mr. Parker that he had to right to an administrative hearing, which Mr. Parker declined.  Mr. Parker's conduct was evaluated by his chain of command, which consisted of Sgt. Gregory Quiller, Lt. Troy Ellison, Capt. Mike Davis, and Chief Kenton Buckner.  Sgt. Quiller sustained both violations of policy against Mr. Parker and recommend a 30 day suspension.  Lt. Ellison sustained both violations against Mr. Parker and recommended a 25 day suspension and remedial training.  Capt. Mike Davis sustained both violations against Mr. Parker and recommended that Mr. Parker be terminated.

**Argument**

**A.     Summary Judgement Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Moyle v. Anderson,* 571 F.3d 814, 817 (8th Cir. 2009). Plaintiff may not rely solely on the allegations in his pleadings. He must set out specific facts showing a genuine issue for trial. *Fowler v. Crawford,* 534 F.3d 931, 940 (8th Cir. 2008).

Although a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party, it is not required to "accept unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004). Plaintiff must produce probative evidence sufficient to demonstrate a genuine issue for trial. *Davenport v. Univ. of Ark. Bd. of Trustees,* 553 F.3d 1110, 1113 (8th Cir. 2009).

**B.     Discrimination Based on Race and Age**

Defendant is entitled to summary judgment on Plaintiff's claim that it discriminated against him based on his race and age in violation of Title VII of the Civil Rights Act codified in 42 U.S.C.

§ 2000E et seq, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. "Discrimination claims brought under Title VII and § 1981 are analyzed under the *McDonnell Douglas* burden shifting framework." *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014). In the absence of direct evidence of discrimination, a discrimination claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Gibson v. American Greetings Corp.*, 670 F.3d 844 (8th Cir. 2012).

> Under the *McDonnell Douglas* burden-shifting framework, a "plaintiff must [first] establish a prima facie case of discrimination." *Jackson v. United Parcel Serv., Inc.,* 643 F.3d 1081, 1086 (8th Cir.2011). To establish a prima facie case for race discrimination, a plaintiff "must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir.2010). If the plaintiffs succeed in establishing a prima facie case, "the defendant may rebut the prima facie case by articulating a non-discriminatory rationale for its action." *Jackson,* 643 F.3d at 1086. In response, "the plaintiff must prove that the defendant's proffered rationale was merely pretext for discrimination." *Id.* The plaintiff may prove pretext by "adducing enough admissible evidence to raise genuine doubt as to the legitimacy of [the defendant's] motive." *Anderson v. Durham D & M, L.L.C.,* 606 F.3d 513, 521 (8th Cir.2010) (internal quotation marks and citation omitted).

*Gibson,* 670 F.3d at 853-54.

Based upon the undisputed facts as shown by the affidavit submitted by Chief Buckner, as well as the excerpts from Plaintiff's deposition and Chief Buckner's deposition, the dispatch audio, and mobile video recordings ("MVR"). Plaintiff cannot establish a prima facie case of race or age discrimination. Even if Plaintiff was able to establish a prima facie case of discrimination, the City has established a legitimate, non-discriminatory reason for Plaintiff's termination and Plaintiff cannot establish that the City's non-discriminatory reason is mere pretext for discrimination.

**1.) Plaintiff cannot establish a prima facie case of discrimination.**

"Under the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a prima facie case of discrimination. *McGinnis v. Union Pac. R.R.,* 496 F.3d 868, 873 (8th Cir.2007). To meet her burden, a plaintiff must show the following: (1) that [he] is a member of a protected class; (2) that [he] was meeting her employer's legitimate job expectations; (3) that [he] suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently." *Fields v. Shelter Mut. Ins. Co.,* 520 F.3d 859 (8th Cir. 2008) (Citing *Carpenter v. Con–Way Cent. Express, Inc.,* 481 F.3d 611, 616 (8th Cir.2007)). The undisputed facts in this case show that Mr. Parker cannot make a prima facie case of discrimination.

**(a)      Plaintiff has not shown any direct evidence of discrimination.**

Mr. Parker cannot show any extrinsic evidence of discrimination.  At his evidentiary deposition has stated that he felt that Chief Buckner, a black male over forty years old, discriminated against him based on race and age because his disciplinary action was severe. Further, Mr. Parker's testified heavily that he believed his membership in the Little Rock Black Police Officer's Association ("LRBPOA") played a role in his termination.  However, Mr. Parker can only point to his personal beliefs in support of these claims.  Chief Buckner did not target older black officers for termination, and Mr. Parker cannot identify any other African American LRPD officers, other than his original co-plaintiffs, that were administered an adverse employment action during Chief Buckner's tenure[4].  Finally, Mr. Parker acknowledges that Chief Buckner promoted African American Officers during his tenure, and even promoted Mr. Parker's former co-plaintiff, Captain Tanya Washington, an African American female over 40.[5]  As such, the picture painted by Mr. Parker of Chief Buckner does not show a Chief that is targeting employees based on their

---

[4] See *SUMF* 2, 3, 4, 5, 7,
[5] Capt. Washington asserted age discrimination see Complaint ¶

race or age.  Mr. Parker was one of a group of individuals that suffered adverse employment actions during Chief Buckner's tenure, but as the subsequent portions of this brief will show, disciplinary actions under Chief Buckner were not based on race, age or gender.

**2.)    Even if the Court assumes a prima facie case, Defendant is entitled to judgment as a matter of law because Plaintiff cannot show pretext under the *McDonnell Douglas* burden-shifting framework.**

Mr. Parker has not established that similarly situated employees outside his protected class were treated differently.  However, Should this Court conclude that Mr. Parker established a prima facie case of race and age discrimination, under the next step of the *McDonnell Douglas* burden shifting framework, The City has articulated a legitimate, non-discriminatory reason for Plaintiff's termination.  First, each officer in Plaintiff's chain of command sustained the policy violations against him, and each member recommended a significant suspension or termination.  As Captain Davis and Chief Buckner noted, Mr. Parker had sixty-five days of suspension in his history and two demotions.  Further, as Chief Buckner noted in his evidentiary deposition, he terminated Mr. Parker because these incidents were additional incidents that involved Mr. Parker's "performance and decision making," and that he felt that Mr. Parker was "unwilling or unable to modify his behavior."

Since the City has met the burden of articulating a non-discriminatory reason for Mr. Parker's termination, Mr. Parker must "produce evidence sufficient to create a genuine issue of material facts showing that [the City's] explanation is merely a pretext for unlawful discrimination." *Barber,* 656 F.3d at 792 (quoting *Wierman v. Casey's General Store*, 638 F3d. 984, 993 (8th Cir. 2011)).  One of the ways that a plaintiff may show pretext is by showing that the employer treated similarly situated employees in a disparate manner. *Gibson,* 670 F.3d at 854.

The burden for establishing a similarly situated employee at the pretext stage is rigorous. *Gibson,* 670 F.3d at 855.  The plaintiff has the burden of proving that the employees are similarly

situated in all relevant respects. *Id.* "To be similarly situated, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Barber v. C1 Truck Driver Training, LLC C& S Acquisition Inc.*, 656 F.3d 782, 796 (8th Cir. 2011). (internal quotations and citations omitted).

Mr. Parker's counsel identified a number of LRPD officers that he feels are similarly situated to Mr. Parker, but they are not. Mr. Parker was an LRPD officer for twenty three years and served under four Chiefs of Police[6]. As aforementioned when Chief Buckner terminated his he'd accrued sixty-five days of suspension and been demoted by Chief Thomas and Chief Buckner. The officers identified by Mr. Parker, that were disciplined by Chief Buckner were not disciplined for the same violation of policy as Mr. Parker, but most importantly none of these officers, save Lisa Nava Hall, had a similar disciplinary history to Mr. Parker[7].

Chris Alsbrook, Jordan White, Kristin Watson, Lee Pitts and Raswanda McDaniel are the officers identified by Mr. Parker's counsel that were disciplined for violating G.O. 310.IV.A[8]. The subsection of the General Order that they violated states, "On-scene Investigation – When responding to a domestic abuse call, officers hall: (5) After each party is interviewed, responding officers shall determine if an arrest should be made or whether other actions should be taken. Where physical evidence exists that domestic abuse has occurred within the last twelve hours, the officer will arrest the suspect." Mr. Parker was terminated for violating G.O. 310.V.A which states that, "In addition to other arrest authority, officers are authorized to make warrantless, probable

---

[6] See *SUMF* 10

[7] The only officers that Mr. Parker's counsel identified that were disciplined by Chief Buckner and had a disciplinary history that included suspension were Raswanda McDaniel 15 days; Wade Roberson 3 days; Edmund Brooks 2 days, Jeremy Palmer 1 day, Gregory Quiller 1 day and Lisa Nava Hall 67 days.

[8] While the remaining officers identified by Plaintiff's counsel were disciplined for violating R.R. 1/4002.00, the conduct varies from drunk driving to cursing on duty in front of civilians. As such, the City asserts that these instances cannot be considered as "the same or similar conduct" under the McDonnell Douglas burden shifting framework.

cause arrest of a person for a misdemeanor offense, even if the act occurred outside the officer's presence when: (3) The person: a) is subject to an order of protection; b) has knowledge of the order; and c) knowingly violated the order (A.C.A. § 5-53-134).   Essentially, the officers identified as comparators were disciplined for investigating domestic disturbances, witnessing evidence of domestic violence and failing to make an arrest.   Mr. Parker was terminated for absent-mindedness. Exhibits six through nine show that Mr. Parker was clearly informed that Darnell Smith had a parole violation, and that Tina Aaron had an order of protection against Mr. Barton.   He replied 10-4 to dispatch and unexplainably reacted adversely to the information that he'd just received. While the policy violations differ, it is clear from the record of this case that Chief Buckner took both seriously[9].   The difference between the officers identified by Mr. Parker's counsel and Mr. Parker is that he was on Chief Buckner's 60 day suspension list.

Finally, the only LRPD officer identified by Mr. Parker's counsel that is remotely similar to Mr. Parker is Lisa Nava Hall, and that is because by March of 2016, she'd accrued sixty-seven (67) days of suspension.   However the undisputed facts show that both she, like Mr. Parker was not terminated for her first policy violation under Chief Buckner.   Further, Chief Buckner distinguished Lisa Nava Hall's infraction from Mr. Parker's in that hers was intentional whereas Mr. Parker's was not.    The LRPD officers identified by Mr. Parker's counsel are not similarly situated to Mr. Parker in all relevant respects.   Mr. Parker's disciplinary history sets him apart, and Chief Buckner, recognizing the extensiveness of that history, and noting that many of his infractions dealt with decision-making rightfully terminated Mr. Parker's employment because his decision making was a liability to the organization.

---

[9] Lee Pitts received a 25 day suspension, Raswanda McDaniel received a 15 day suspension; Chris Alsbrook received a 16 day suspension; Jordan white received a 25 day suspension and Kristin Watson received a30 day suspension

**C.      Arkansas Whistleblower Act**

Mr. Parker alleges that he is a whistleblower by his association with the LRBPOA and his alleged published statements in connection with the case styled *Perkins v. Hastings*. "Pursuant to the AWBA, "[a] public employer shall not take adverse action against a public employee because the public employee ... communicates in good faith to an appropriate authority (A) the existence of waste of public funds, property, or manpower ... or (B) a violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of this state." Ark. Code Ann. § 21–1–603(a)(1).

"To prevail in an action under the AWBA, 'the public employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse action because the employee ... engaged ... in an activity protected under this subchapter." Ark. Code Ann. § 21–1–604(c). The mere fact that an employee meets the definition of a whistleblower does not mean that he or she is protected from all subsequent discipline. A public employer has an affirmative defense to a whistle-blower lawsuit if the adverse action taken against the public employee was due to employee misconduct, poor job performance, or a reduction in workforce unrelated to a whistle-blowing communication. Ark. Code Ann. § 21–1–604(e)(1)". *Bales v. City of Fort Smith*, 2016 Ark. App. 491, 2, 505 S.W.3d 705, 708 (2016).

Mr. Parker is not a whistleblower.  He testified at his deposition that he has never individually, or as a member of the LRBPOA spoken out against any decision, statement or action that Chief Buckner took during his tenure as Chief of the LRPD[10]. Further, the statements that Mr. Parker gave to Mr. Laux in a deposition in another civil case about his observations in

---

[10] *SUMF 8*

supervising Josh Hastings do not amount to communicating in good faith to an appropriate authority concerning the waste of public finds, property or manpower.

Even if this Court concluded that Mr. Parker made a prima facie case under Ark. Code Ann. § 21–1–603(a)(1), under Ark. Code Ann. § 21–1–604(e)(1) the City of Little Rock has established an affirmative defense. Mr. Parker's termination was due to poor job performance. Mr. Parker failed to effectuate two arrests when dispatch clearly notified him that Mr. Smith had a parole violation and Mr. Barton had an Order of Protection against him filed by the complainant at the scene, Ms. Aaron. Further, Chief Buckner was not the Chief of the LRPD when Josh Hasting shot Bobby Moore, and Mr. Parker has not established that the Chief Buckner even knew of the statements he made about Josh Hastings that were allegedly published. Mr. Parker has not established a causal link between the Hastings civil trial and his termination. Chief Buckner has consistently stated that Mr. Parker's disciplinary record and his decision-making were the reasons for his termination, and there is no other evidence to the contrary.

**D.    60 Day Policy.**

As a part of Mr. Parker's appeal from the Little Rock Civil Service Commission's decision to uphold Chief Buckner's termination, Mr. Parker filed a claim under 42 USC § 1983 claiming Chief Buckner's decision to inform the individuals with 60 or more days of suspension that they would be terminated for another suspend-able policy violation amounted to an unconstitutional policy. "A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.' " *Ware v. Jackson County,* 150 F.3d 873, 880 (8th Cir.1998) (quoting *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 691 (1978)). A policy which does not "affirmatively sanction" unconstitutional action, and which instead relies on the

discretion of the municipality's employees, is not an unconstitutional policy. *Moyle v. Anderson,* 571 F.3d 814, 818 (8th Cir. 2009).

Chief Buckner's decision to terminate officer's with 60 or more days of suspension if they committed a violation of policy that warranted suspension did not affirmatively sanction unconstitutional action.  As such, the City is entitled to summary judgment as to that aspect of Mr. Parker's civil service appeal[11].

### Conclusion

Based upon an application of the burden-shifting framework and standards set out in *McDonnell Douglas* to the undisputed facts of this case, the City has established that it is entitled to judgment as a matter of law.  Mr. Parker cannot an LRPD officer that was similarly situated to him and disciplined differently.  Further, he cannot show that Chief Buckner's non-discriminatory reason for terminating him was pretext for discrimination.  The City is entitled to a judgment as a matter of law.

Respectfully submitted,

Thomas M. Carpenter
City Attorney

By:      /s/ Alexander J. Betton
          Alexander J. Betton, #2009275
          Deputy City Attorney
          City Hall - Suite 310
          500 West Markham
          Little Rock, Arkansas 72201
          (501) 371-4527
          abetton@littlerock.org

---

[11] Ark. Code. Ann. 14-51-308€(1)(A) states that "A right of appeal by the city or employee is given from any decision of the commission to the circuit court within the jurisdiction of which the commission is situated." As such, the City would request that the remainder of Mr. Parker's civil Service appeal be remanded back to Pulaksi County Circuit Court.